DENISE WARCHOL, a Minor, by Frances Warchol, her Mother and Next Friend, Plaintiff-Appellant, *v.* THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 77-192

Opinion filed August 8, 1979.

John Panici, of Chicago, for appellant.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Robert L. Thompson, Assistant Corporation Counsel, of counsel), for appellees.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:
The plaintiff, Denise Warchol, a minor, brought suit through her mother, Frances Warchol, to recover damages for personal injuries she allegedly suffered when she slipped while walking on an iron fence and fell against a tree. She named as defendants the city of Chicago, Delores Ann Glista, Mary Ann Rodriguez and Edward Glista, Jr. The Circuit Court of Cook County granted a motion to dismiss the complaint as to the city and granted the motion for summary judgment filed by the other defendants. The plaintiff appeals those orders.

In her amended complaint the plaintiff alleged that on July 14, 1972, the defendant, city of Chicago, possessed, maintained and controlled a portion of the sidewalk and parkway located at 4301 South Wolcott Street in Chicago. She further alleged that the individual defendants owned and controlled the property at this address, which was adjacent to the sidewalk and parkway. The plaintiff claimed that on that date she was playing in the vicinity of the parkway and was injured when she stumbled and fell to the ground. At the time the plaintiff was 15 years old and "was

in the exercise of that degree of care required of a child of her age, intelligence, capacity, experience and understanding."

The plaintiff raised two counts against each defendant. Count I essentially presented a straight negligence action. In this count, the plaintiff alleged that the city was guilty of one or more of the following acts of negligence:

"(a) Maintained a tree and tree stump in such location, in such a condition, as to be dangerous to any individual or individuals using the way in question, of which condition this defendant had notice or in the exercise of reasonable care would have had notice;

(b) Negligently allowed the erection and maintenance of the iron fence in question at the aforesaid location;

(c) Negligently failed to prohibit the erection of such dangerous condition on or adjacent to a public way;

(d) Negligently failed to enforce the applicable ordinances of the Municipality and as contained in the Municipal Code of Chicago, when said defendant knew or in the exercise of reasonable care should have known that such violation would cause injury to others."

Also in count I the plaintiff alleged that the individual defendants were guilty of one or more of the following acts of negligence:

"(a) Maintained a tree and tree stump in such location, in such a condition, as to be dangerous to any individual or individuals using the way in question, of which condition these defendants had notice or in the exercise of reasonable care would have had notice;

(b) Negligently maintained the iron fence in question over a public way contrary to the applicable ordinances of the City of Chicago;

(c) Negligently placed or caused to be placed and maintained upon a public way an obstruction, in violation of certain ordinances of the City of Chicago;

(d) Negligently broke or otherwise changed the condition of a public way in violation of ordinances of the City of Chicago."

Count II was based upon an attractive nuisance theory. The plaintiff alleged that the iron fence, in conjunction with the tree and tree stump, created a condition which was "inherently attractive to children" and that the defendants "knew or in the exercise of ordinary care ought to have known" that this condition attracted children to play. She then alleged the defendants were guilty of one or more negligent actions which resulted in her injury. The negligent actions cited in count II were, in essence, the same as those cited in count I.

The city filed a motion to dismiss the action as to it. Appended to the motion were portions of the deposition of the plaintiff and photographs of the parkway area where the accident occurred. In her deposition, the

plaintiff stated that she was walking on top of a fence made out of metal pipes or poles while a girlfriend held her arm. The pole on which she was walking was approximately two feet off the ground. Suddenly, her foot slipped and twisted around the pole, causing her to fall. She landed on the ground and struck her arm on a tree which was also located on the parkway. The plaintiff stated that part of the paint on the pole was rusted away; however, when asked what caused her to fall she stated that she guessed that she had just lost her balance. The photographs, submitted by the city, did not indicate that there was a tree stump on the parkway, but they showed that portions of the roots of the tree against which the plaintiff fell protruded above the ground.

The individual defendants moved for summary judgment. Attached to their motion was the affidavit of Rodriguez and Delores Ann Glista. In this affidavit, the affiants asserted that the property adjacent to the location where the accident occurred had been purchased by their father. They did not know who had installed the fence which was located on the city's property. They claimed that the only maintenance of the fence, which they or their parents had done, was to paint it.

The plaintiff filed an answer to the city's motion to dismiss and submitted portions of the depositions of herself, Rodriguez and Delores Ann Glista. In her answer, the plaintiff contended that the photographs submitted to the court by the city showing that the roots of the tree "stick up from the ground and appear sharp and dangerous" supported her allegation that there was a tree stump in the parkway. In the portion of her deposition she appended to her answer, she stated that following her fall she landed on her back with her head against the tree and her arm across the stump. Her legs were across the pole.

Glista, in her deposition, stated that in May 1973 she and the other owners of the property at 4301 South Wolcott had the fence removed. She did not know who had constructed the fence or who had planted the tree, but that she was 27 years of age and the fence had been there for her entire life. When asked if her father maintained the fence, she indicated that he would paint the fence when necessary. She also said that after her father died, she and the other members of her family also painted the fence.

Rodriguez, in her deposition, stated that on a "few" occasions prior to the date of the accident, she had seen children playing in the area of the fence. When she saw them, she chased them away. Glista also said that as a child she had walked on the fence.

We are presented with two questions on appeal: (1) whether the trial court properly granted the city's motion to dismiss and (2) whether the trial court properly granted the motion by the individual defendants for a summary judgment. We first consider the propriety of the city's dismissal.

■■■ Considering first the alleged acts of negligence of the city, we feel that under the facts alleged by the plaintiff, the city was under no duty to protect the plaintiff from the type of injury she sustained. A duty is an obligation imposed by the law which requires one to conform to a certain standard of conduct for the protection of another against an unreasonable risk. (*Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 328 N.E.2d 538; *Barnes v. Washington* (1973), 56 Ill. 2d 22, 305 N.E.2d 535.) Although the liability of a municipal corporation is currently governed by the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1975, ch. 85, par. 1—101 *et seq.*), this act has essentially continued the common law duties with respect to the liability of a municipality in the maintenance of its public ways. (See *Horton v. City of Ottawa* (1976), 40 Ill. App. 3d 544, 352 N.E.2d 23.) Under these common law principles, a municipality is not considered to be an insurer against all accidents occurring on the public way; rather, the municipality is required to maintain its streets and sidewalks in a reasonably safe condition for the amount and kind of travel which may be fairly expected upon them. (*Bradshaw v. City of East St. Louis* (1954), 3 Ill. App. 2d 300, 122 N.E.2d 43; *Ritgers v. City of Gillespie* (1953), 350 Ill. App. 485, 113 N.E.2d 215.) The courts have extended this duty to keeping the parkways free of obstacles which create an unreasonable risk of harm. See *Greig v. City of Park Ridge* (1964), 49 Ill. App. 2d 237, 199 N.E.2d 609.

■■ In the present case the plaintiff is seeking damages for injuries she suffered when she fell while attempting to walk along the top of a fence, constructed of metal pipes, which was situated on the parkway. Since her conduct hardly constituted a use of the parkway in the ordinary manner, we believe that the city was under no duty to protect the plaintiff from injury while engaged in such activity. We conclude that the plaintiff has failed to plead sufficient facts to sustain an action for negligence and that the trial court properly dismissed the action as to those allegations.

The plaintiff also alleged that the city failed to enforce its applicable ordinances. In particular, the plaintiff points to sections 33—1 and 34—1 of the Municipal Code of Chicago. Chapter 33 of the Code regulates the work which may take place on and under the public ways and section 33—1 requires permits for making an opening in a public way. This ordinance provides, in pertinent part, as follows:

"It shall be unlawful for any person to make an opening in any public way or other public place without first obtaining a permit therefor from the Commissioner of Streets and Sanitation."

Chapter 34 of the Code regulates the structures which may be placed upon and under public ways and section 34—1 prohibits the construction of certain types of structures absent authority from the city council. This section provides, in pertinent part, as follows:

"No person shall construct or maintain any bay window, bridge, wire, pipe or other structure or device over any public way or other public place; * * * or install or maintain any wire, pipe or conduit underneath the surface of any public way or other public place without first having obtained specific authority by ordinance passed by the city council authorizing such special privilege."

The plaintiff contends that by maintaining a fence constructed out of metal pipe upon the parkway the city breached these ordinances and that since a breach of a municipal ordinance constitutes a prima facie case of negligence, it was improper for the trial court to dismiss the action.

■■■ A violation of a statute or ordinance designed for the protection of human life or property is prima facie evidence of negligence. This rule is also applicable where a municipality breaches its own ordinance. (*French v. City of Springfield* (1976), 65 Ill. 2d 74, 357 N.E.2d 438.) However, to establish negligence based upon the breach of a municipal ordinance, the plaintiff must demonstrate that he is within the class of persons intended to be protected and the ordinance was designed to protect against the kind of injury for which he seeks recourse. (*French*; *Mangan v. F. C. Pilgrim & Co.* (1975), 32 Ill. App. 3d 563, 336 N.E.2d 374.) While both the ordinances the plaintiff relies upon promote, to some degree, the safe and unhindered use of the public ways, we do not feel that they were designed to protect a 15-year-old girl while walking on top of a fence. Moreover, under the facts, we fail to see a violation by the city of these ordinances. By requiring a permit prior to the making of an opening in a public way, we believe that section 33—1 was designed to regulate excavations of a greater dimension than those required for the construction of a fence. With respect to section 34—1, we do not feel that the term "pipe" in that ordinance relates to the mere use of a pipe as material for a fence. We, therefore, conclude that the trial court properly dismissed the action.

■■ Under the attractive nuisance theory raised by the plaintiff, the parties recognize that the traditional concept of the attractive nuisance doctrine was rejected by the supreme court in *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 126 N.E.2d 836. Instead, the court adopted a test based upon the foreseeability of harm to the child. Specifically, the court stated that an owner or occupier of land has a duty to exercise due care to remedy the condition or otherwise protect the children from injury where "the owner or person in possession knows, or should know, that young children habitually frequent the vicinity of a defective structure or dangerous agency existing on the land, which is likely to cause injury to them because they, by reason of their immaturity, are incapable of appreciating the risk involved, and where the expense or inconvenience of remedying the condition is slight compared to the risk to the children."

(5 Ill. 2d 614, 625.) The fact that the plaintiff in the instant case is 15 years old will not prevent the principles of *Kahn* from applying. *Skaggs v. Junis* (1960), 27 Ill. App. 2d 251, 169 N.E.2d 684.

■■ For liability to be imposed upon an owner or occupier of land under the rule in *Kahn,* the child must be of such an age and experience as to be incapable of appreciating the danger involved in his or her activities. Therefore, no action may be maintained if children of a similar age and experience as the plaintiff are capable of understanding the danger involved. (See *Sahara v. Ragnar Benson, Inc.* (1977), 52 Ill. App. 3d 119, 367 N.E.2d 233; *Merkousko v. Janik* (1973), 14 Ill. App. 3d 343, 302 N.E.2d 390.) We believe that the plaintiff was of sufficient age and experience to appreciate the danger involved in attempting to walk on the top of a fence constructed of metal pipes which is approximately two feet in height and which is located close to a tree. We, therefore, conclude that count II was properly dismissed against the city.

We now consider whether the trial court properly granted the individual defendants' motion for summary judgment. A summary judgment is proper where, from the pleadings, depositions and admissions on file, together with any affidavits and exhibits, it is evident that there exists no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Ill. Rev. Stat. 1975, ch. 110, par. 57(3); *Barnes v. Washington* (1973), 56 Ill. 2d 22, 305 N.E.2d 535.

Count I of the plaintiff's complaint alleged that the individual defendants were negligent in maintaining an iron fence in violation of certain city ordinances and were negligent in maintaining a tree and tree stump in a dangerous condition. Count II of the plaintiff's complaint alleged negligence by the individual defendants under the attractive nuisance theory. The ordinances which the plaintiff claims the defendants violated are the same ordinances which she claimed the city violated. We believe that the reasons stated in support of the dismissal of the action against the city based upon the breach of municipal ordinances are similarly applicable here to support the grant of summary judgment.

Referring to the other allegation of negligence appearing in count I of the plaintiff's complaint, the maintenance of a tree and tree stump in dangerous condition, the defendant, Delores Ann Glista, stated in her deposition that a big, old tree was located in the parkway but denied the existence of a tree stump. Attached to the city's motion to dismiss was a photograph showing that some of the tree roots broke through the soil and rested above the ground. There was no evidence of a tree stump.

⊕ 8, 9 Necessary to a finding of negligence is the existence of a duty or an obligation requiring one to conform to a certain standard of conduct for the protection of another against an unreasonable risk. (*Fancil.*) There can be no negligence resulting from an act or omission where there is

no breach of duty. (*Murphy v. Cory Pump & Supply Co.* (1964), 47 Ill. App. 2d 382, 197 N.E.2d 849.) Whether the defendants had a duty to protect the plaintiff from injuries resulting from the tree and protruding roots is a question of law to be determined by the court. *Fancil; Barnes; Murphy.*

■■ In reviewing the pleadings, affidavits and depositions, we believe the individual defendants owed no duty to the plaintiff since the tree and roots did not create an unreasonable risk of harm and because the defendants did nothing to maintain the tree or roots so as to create an unreasonable risk of harm. (See *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 383 N.E.2d 177; *Barnes.*) Therefore, summary judgment was properly granted.

■■ In count II of the complaint the plaintiff relies on the attractive nuisance theory as modified by the *Kahn* decision. In order to impose liability based on *Kahn*, the defendant need not be the owner of the premises upon which the dangerous condition exists. One who creates the condition or is in control of the premises is also subject to liability. The locus in quo need not be private property; rather it can be a public street, sidewalk or parkway. See *Corcoran; Deming v. City of Chicago* (1926), 321 Ill. 341, 151 N.E. 886.

■■ The defendant Glista stated in her deposition that the iron railing fence in the parkway was painted by her father before his death and that it was maintained and painted by other members of her family thereafter. She also stated that they removed the iron fence after the plaintiff was injured. Defendant Rodriguez stated in her deposition that children did play on the railing about once every two weeks and that they would chase the children away. Based on the depositions of Glista and Rodriguez, one could conclude that the individual defendants exercised some control over the parkway and could therefore be subject to the *Kahn* principles. However, we find as a matter of law that the defendants owed no duty to the plaintiff for the same reasons the municipality owed no duty. Therefore, based upon the reasons stated above, we believe that the trial court properly granted summary judgment to the individual defendants.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

SIMON, P. J., and McNAMARA, J., concur.