MARLENE ESPINOSA *et al.*, Plaintiffs-Appellants, v. BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT No. 508, County of Cook, Defendant-Appellee.

First District (4th Division)   No. 1—93—0249

Opinion filed March 31, 1994.

Martin Tiersky, of Chicago, for appellants.

Sharon L. Tiller, of Chicago, for appellee.

JUSTICE THEIS delivered the opinion of the court:

The plaintiffs, Chicago residents who had previously registered at one or more of the City Colleges of Chicago, brought this action against defendant, the Board of Trustees of Community College District No. 508, to restore more than 500 classes which were eliminated from the academic schedule for the 1992 fall semester. The circuit court dismissed all counts of the complaint for failure to state a cause of action. The plaintiffs now appeal from dismissal of three of those counts. For the reasons presented below, we affirm.

The defendant is the governing board of a public community college district that operates seven community colleges in Chicago pursuant to the Illinois Public Community College Act (Ill. Rev. Stat. 1991, ch. 122, par. 103—1 et seq.). The community colleges governed by the defendant are collectively known as the City Colleges of Chicago. In May 1992, the defendant decided to eliminate certain expenditures during the upcoming fiscal year in order to help resolve the budget deficit of the City Colleges of Chicago. The appropriations that were cut by the defendant would have provided funds for overtime pay for full-time faculty members as well as funds to hire part-time lecturers.

On September 30, 1992, two groups of plaintiffs filed a six-count, class action complaint on behalf of themselves and all other similarly situated individuals. One group included students residing in Chicago who had previously enrolled in classes at one or more of the City Colleges of Chicago and were unable to enroll in one or more classes as a result of the budget reduction. The other group consisted of Chicago taxpayers who alleged that the budgetary decision was arbitrary and would result in a loss of revenue in future years that would have to be made up by the levy of additional taxes on them.

The plaintiffs sought to enjoin the defendant from implementing its budgetary decision to eliminate $4.6 million in appropriations from its fiscal year 1992 budget. The plaintiffs also requested that the defendant be required to provide classes to all qualified students applying for admission, to the extent that the City Colleges had space available.

On December 17, 1992, the circuit court dismissed count I pursuant to section 2—619 of the Illinois Code of Civil Procedure and counts II through VI under section 2—615. (Ill. Rev. Stat. 1991, ch. 110, pars. 2—615, 2—619.) On January 8, 1993, the plaintiffs waived

their right to file an amended complaint and moved for entry of a final judgment. That same day, the circuit court entered an order amending the prior order of December 17 to a dismissal with prejudice.

The plaintiffs now appeal from the dismissal of counts II, III and VI. In count II, the plaintiffs alleged that the defendant violated section 3—17 of the Illinois Public Community College Act by failing to offer a sufficient number of classes to fill all available classroom space. (Ill. Rev. Stat. 1991, ch. 122, par. 103—17.) Count III alleged that the defendant violated article X of the Illinois Constitution by failing to provide for an efficient system of high quality public educational institutions and services. Finally, in count VI, the taxpayer plaintiffs alleged that the defendant's budgetary decision was "arbitrary" and would result in additional real estate taxes to be borne by the plaintiffs and others similarly situated.

## DISCUSSION

When a pleading is challenged by a motion to dismiss, all well-pleaded facts in the complaint are taken as true. (*DiBenedetto v. Flora Township* (1992), 153 Ill. 2d 66, 69, 605 N.E.2d 571, 573.) The reviewing court must determine whether the allegations of the complaint, when viewed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted. (*DiBenedetto*, 153 Ill. 2d at 69-70, 605 N.E.2d at 573.) A cause of action should not be dismissed on the pleadings unless no set of facts can be proved which will entitle a plaintiff to recover. *Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 504, 565 N.E.2d 654, 657; *Safeway Insurance Co. v. American Arbitration Association* (1993), 247 Ill. App. 3d 355, 359, 617 N.E.2d 312, 316.

## COUNT II: ILLINOIS PUBLIC COMMUNITY COLLEGE ACT

●1 In count II of their complaint, the plaintiffs alleged that the defendant violated the Illinois Public Community College Act (Ill. Rev. Stat. 1991, ch. 122, par. 103—1 *et seq.*) by reducing the number of classes being offered in the fall semester of 1992. In support, they cite the following passage from section 3—17 of that act, entitled "Admission of students":

> "The community college districts shall admit all students qualified to complete any one of their programs including general education, transfer, occupational, technical, and terminal, as long as space for effective instruction is available. After entry, the college shall counsel and distribute the students among its programs according to their interests and abilities." (Ill. Rev. Stat. 1991, ch. 122, par. 103—17.)

Without elaboration or further citation to any authority, the plaintiffs argue in their brief that this provision of the Act imposed a duty on the defendant "to provide students with classes to the extent that sufficient space for effective instruction was available."

The plain language of section 3—17 does not address class offerings or student enrollment in specific classes. As its title suggests, section 3—17 concerns only student admission into the community college system; the provision is silent as to whether the board has a duty to offer classes to fill all available physical space. In addition, space is only one of many administrative considerations which the defendant may take into account in determining how many classes will be offered for each subject matter. Under section 3—30 of the Act, for instance, the defendant has authority to exercise all powers "that may be requisite or proper for the maintenance, operation and development of any college or colleges under the jurisdiction of the board." Ill. Rev. Stat. 1991, ch. 122, par. 103—30; see also *Steinmetz v. Board of Trustees of Community College District No. 529* (1978), 68 Ill. App. 3d 83, 87, 385 N.E.2d 745, 748 (observing that the General Assembly intended to grant broad powers to community college district boards to meet contingencies such as the need to reduce staff because of falling enrollments).

The trial court correctly dismissed count II for failure to state a claim.

## COUNT III: ARTICLE X OF THE ILLINOIS CONSTITUTION

●2 In count III, the plaintiffs alleged that the defendant failed to carry out the constitutional mandate of the State to provide "an efficient system of high quality public educational institutions and services." (Ill. Const. 1970, art. X, § 1.) The plaintiffs assert, without citation to any authority, that community colleges constitute "public educational institutions" and, consequently, deserve protection under the Illinois Constitution.

There is no authority to suggest that article X of the Illinois Constitution applies to the State's operation of community colleges. Contrary to the plaintiffs' contention, the Illinois Public Community College Act nowhere defines community colleges as "public schools" for purposes of article X. Although Illinois courts have not addressed the rights of community college students under the 1970 Constitution specifically, cases relying upon the 1870 Constitution have held that community college districts are established by the legislature pursuant to its power to create public corporations, and not pursuant to any provisions of the State Constitution. *People v. Francis* (1968), 40 Ill. 2d 204, 207, 239 N.E.2d 129, 131 ("[J]unior college districts are

created under the legislature's power to create public corporations" and "are not a part of the common school system"); see also *Tyska v. Board of Education of Township High School District 214* (1983), 117 Ill. App. 3d 917, 926, 453 N.E.2d 1344, 1352 (citing *Smith v. Board of Education of Oswego Community High School District* (1950), 405 Ill. 143, 147, 89 N.E.2d 893, 895, to support definition of "public schools" that includes high schools, as well as elementary and grade schools).

The trial court properly dismissed count III.

## COUNT VI: TAXPAYER SUITS

●3 In count VI, the taxpayer plaintiffs alleged that, as a result of the defendant's improper conduct in closing classes which were previously offered, the community colleges of Chicago would suffer a net loss of revenue that would have to be offset by an increase in taxes. The taxpayer plaintiffs urge that this allegation adequately states a claim. The plaintiffs, again without citation, assert in their reply brief that "[t]he law does not require a certainty of harm to the taxpayer" and that "[h]arm to the district by reason of reduced funding in the future suffices."

Taxpayers have an equitable right to sue to protect their interest in public funds. (*Egidi v. Town of Libertyville* (1991), 218 Ill. App. 3d 596, 601, 578 N.E.2d 1300, 1303.) The right of taxpayers to bring suit stems from their equitable ownership of general public funds and their liability to replenish the treasury in the event of misappropriation. (*Egidi*, 218 Ill. App. 3d at 601, 578 N.E.2d at 1303.) Taxpayers must therefore allege that the acts complained of would result in financial loss to themselves personally or together as a whole, through increased taxation, or in some other harm to the governmental body involved. (*Lynch v. Devine* (1977), 45 Ill. App. 3d 743, 749, 359 N.E.2d 1137, 1141 (noting that courts have "looked with disfavor" on taxpayer suits where no financial injury threatens plaintiff or plaintiff's fellow taxpayers); see also *Egidi*, 218 Ill. App. 3d 596, 578 N.E.2d 1300 (sustaining taxpayer's complaint which alleged that township improperly spent public funds to acquire real estate).) Absent such allegations, the taxpayers' complaint is fatally defective. *Lynch*, 45 Ill. App. 3d at 749, 359 N.E.2d at 1141.

The taxpayer plaintiffs here failed to allege that the defendant's acts will result in financial harm to them or to any relevant governmental body. The complaint contains only the speculative allegation that, as a result of the defendant's decision to cancel more than 500 classes in 1992, the City Colleges of Chicago will lose State reimbursement funds in 1994 that will need to be offset by additional real estate taxes. The plaintiffs, however, cannot substantiate their

proposition that taxpayers will be liable for reduced revenues in 1994. This proposition, for instance, does not take into account the possibility that the defendant may avail itself of other budget-cutting proposals, offsets, or revenue enhancements during the intervening period.

The taxpayer plaintiffs' complaint is fatally defective because it fails to establish both a misappropriation of public funds and the plaintiffs' liability to replenish the treasury. The trial court correctly dismissed count VI.

Affirmed.

CAHILL, P.J., and JOHNSON, J., concur.